# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

JULIE LECLERE,

       Plaintiff,

vs.

BIG LOTS STORES, INC.,

       Defendant.

No. 06-CV-1018-LRR

**ORDER**

_____

## *TABLE OF CONTENTS*

*I.   INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.  RELEVANT PRIOR PROCEEDINGS* . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III. JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.  LEGAL STANDARD FOR SUMMARY JUDGMENT* . . . . . . . . . . . . . . . . *3*

*V.   UNDISPUTED MATERIAL FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *A.   Local Rules* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *B.   Summary Judgment Facts* . . . . . . . . . . . . . . . . . . . . . . . . . *6*

*VI.  ANALYSIS: COMMON LAW WRONGFUL DISCHARGE* . . . . . . . . . . . *8*
    *A.   Arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
    *B.   Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
    *C.   Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*

*VII. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

## I. INTRODUCTION

Before the court is Defendant Big Lots Stores, Inc.'s ("Big Lots") Motion for Summary Judgment on Count I ("Motion") (docket no. 12). Defendant requests oral argument, but the court finds oral argument is unnecessary.

## II. RELEVANT PRIOR PROCEEDINGS

On May 30, 2006, Plaintiff Julie LeClere ("LeClere") filed a two-count Petition against Big Lots in the Iowa District Court in and for Dubuque County. Count I alleges common law wrongful discharge. Count II alleges common law defamation. The crux of LeClere's Petition is that Big Lots fired her without following the procedures in an employee handbook and told other employees false reasons for her discharge. LeClere seeks compensatory damages, punitive damages and attorney fees.[1]

On June 23, 2006, Big Lots removed the case to this court pursuant to 28 U.S.C. §§ 1441 and 1446, and Local Rule 81.1. Big Lots invoked the court's diversity subject matter jurisdiction, 28 U.S.C. § 1332.

On August 16, 2006, Big Lots filed the Motion. On September 11, 2006, LeClere filed a Resistance. On September 20, 2006, Big Lots filed a Reply.

## III. JURISDICTION

Big Lots invokes this court's diversity subject matter jurisdiction, 28 U.S.C. § 1332. LeClere is a citizen of Iowa. Big Lots is a citizen of Ohio. The amount in controversy, when punitive damages are included, exceeds $75,000, exclusive of interest and costs. *See, e.g., Crawford v. Hoffman-La Roche, Ltd.*, 267 F.3d 760, 766 (8th Cir. 2001) ("Punitive damages, of course, may be used to establish diversity jurisdiction.")

---

[1] On October 3, 2006, LeClere filed an Amended Petition. Count I of the Amended Petition is identical in all relevant respects to Count I of the Petition.

(citing *Allison v. Sec. Benefit Life Ins. Co.*, 980 F.2d 1213, 1215 (8th Cir. 1992)). Therefore, the court is satisfied that it has subject matter jurisdiction over this case.

### IV. *LEGAL STANDARD FOR SUMMARY JUDGMENT*

Summary judgment is appropriate if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it is a fact that "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see, e.g.*, *Baum v. Helget Gas Prods., Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for

the nonmoving party." *Anderson*, 477 U.S. at 248.

## V. UNDISPUTED MATERIAL FACTS

### A. *Local Rules*

The Local Rules require the party that moves for summary judgment to file "[a] statement of material facts setting forth each material fact as to which the moving party contends there is no genuine issue to be tried, filed as an electronic attachment to the motion under the same docket entry." LR 56.1(a)(3). "Each individual statement of material fact must be concise, numbered separately, and supported by references to those specific pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits that support the statement, with citations to the appendix." LR 56.1(a). Big Lots filed a statement of material facts that contains sixteen individual numbered statement of facts with such references. Big Lots's filing complies with the Local Rules.

Once the moving party files its statement of facts, the Local Rules require the resisting party to file a response, "in which the resisting party expressly admits, denies, or qualifies each of the moving party's numbered statements of fact." LR 56.1(b)(2). "The failure to respond with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact." LR 56.1(b). In its Reply, Big Lots claims that LeClere's response to Big Lots's statement of material facts is deficient. As a sanction, Big Lots asks the court to deem all of its statements of material fact admitted.

Of Big Lots's sixteen individual statements of material fact, LeClere attempts to admit eleven (¶¶ 1-4, 7-10, 13-14 and 16), deny three (¶¶ 5, 12 and 15) and qualify two (¶¶ 6 and 11). Big Lots claims LeClere's denials and qualifications are deficient, because LeClere has failed to provide references to the specific portions of the record that support

4

her refusal to admit those statements. Big Lots also points out that some of LeClere's responses are bare assertions and are not supported by evidence, such as affidavits.

The court has examined LeClere's responses to paragraphs 5, 6, 11, 12 and 15 of Big Lots's statement of material facts. The court finds that LeClere's responses to paragraphs 5 and 6 comply with Local Rule 56.1(b)(2).[2] The court finds, however, that LeClere's responses to paragraphs 11, 12 and 15 do not comply with Local Rule 56.1(b)(2). In these responses, LeClere fails to provide references to specific portions of the record. Indeed, it appears her responses are simply bare assertions; conspicuously absent is an affidavit from LeClere.[3] Accordingly, the court shall deem admitted paragraphs 11, 12 and 15 of Big Lots's statement of material facts. LR 56.1(b). "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

Big Lots also points out that Local Rule 56.1(b)(3) requires the nonmoving party to file "[a] statement . . . of additional material facts that [it] contends preclude summary judgment." LR 56.1(b)(3). LeClere did not file such a statement. Big Lots moves the court to strike those portions of LeClere's brief that attempt to inject additional material

---

[2] Because it makes no difference to the outcome of the Motion, the court shall ignore the fact that LeClere's response to paragraph 6 lacks foundation and is not identical to the garbled document in its Appendix (docket no. 31).

[3] For example, in paragraph 15 of its statement of material facts, Big Lots asserts that LeClere admitted that her actions during her employment were "wrong and against company policy." In support of this assertion, Big Lots points to a written statement that is supported by an affidavit from the manager of its human resources department. In its response to paragraph 15, LeClere simply responds that "Plaintiff does not recall making this statement."

facts into the record. *See, e.g.*, LeClere's Brief in Support of Resistance (docket no. 18-3), at 2. The court grants the motion to strike.

### B. Summary Judgment Facts

As viewed in the light most favorable to LeClere, the summary judgment facts are these:

On November 23, 2005, Big Lots hired LeClere to work as an associate at its store in Dubuque, Iowa.[4] Soon after her hire, Big Lots provided LeClere with a copy of its Associate Handbook ("Handbook"). The following disclaimer appeared on the first page of the Handbook, in a small font:

> *This [Handbook] is presented for informational purposes only and can be changed at any time by [Big Lots], without notice. This [H]andbook is not an employment contract, expressed or implied. As a Big Lots associate, you have primary responsibilities as part of your position. Given the fast-paced nature of our business, you may be asked to perform other tasks to assist us in meeting the needs of our customers. Big Lots associates are employees-at-will, and either the associate or Big Lots can terminate the employment relationship at any time for any reason.*

(docket no. 31, emphasis in original).

The Handbook lists its work rules in a Standards of Conduct ("Standards") section. The list is "not all-inclusive." Prohibited behaviors include: sexual harassment, physical assault, lewd gestures, inappropriate fraternization, use of illegal drugs, smoking in an unauthorized area, "[d]ishonest activities such as theft, selling merchandise at a price lower than that which is marked on the goods without authorization," insubordination,

---

[4] Big Lots closed its Dubuque store in January of 2006 for undisclosed business reasons.

"walking off the job without notifying management," "[m]isuse of the associate discount privilege," and "[v]iolation of proper store procedures and/or failure of store associates to perform established procedures." Any violation of the Standards "may result in Disciplinary Counseling up to and including immediate termination of employment."

The Handbook contains Big Lots's Disciplinary Counseling Policy ("Disciplinary Counseling"). Disciplinary Counseling is designed to advise associates of performance issues and help them "get back on track." Disciplinary Counseling "encourages managers to have informal discussions with associates experiencing performance deficiencies." If the associate shows little or no improvement after such discussions, the manager "may take the following steps": (1) hold a "Counseling Session," (2) hold a "Final Counseling Session" and (3) terminate the associate's employment. A Counseling Session is a formal discussion between the associate and the manager. A Final Counseling Session is a similar meeting that may be held "if there has been a repeat incident or lack of improvement since the Counseling Session."

Under Disciplinary Counseling, a manager may skip either the Counseling Session or the Final Counseling Session "based on the nature of the offense." "A serious violation of [Big Lots's] policy may result in immediate termination of employment."

On November 25, 2005, LeClere acknowledged receipt of the Handbook by signing a Handbook Acknowledgment Form ("Form"). Section 3 of the Form states:

> The [Handbook] is presented for informational purposes only and can be changed at any time by [Big Lots] without notice. The [H]andbook is not an employment contract, expressed or implied. [Big Lots] associates are employees at-will and, either the associate or [Big Lots] can terminate the employment relationship at any time for any reason. No representative of [Big Lots] has the authority to enter into an agreement with an associate that is contrary to the aforementioned. I have

7

> received a copy of the [Handbook]. I have read and familiarized myself with the information in the [H]andbook, and the job responsibilities for my position have been explained to me.

Kathryn Meyer, Big Lots's Assistant Store Manager, witnessed LeClere sign the Form, and then signed it herself.

On December 24, 2005, Meyer reported LeClere for violating several store policies. Specifically, Meyer discovered that LeClere had (1) purchased two futon pads at less than the correct price; (2) rang up the sales transaction herself; and (3) left the store while she was still "on the clock," in order to take the futon pads to her car. On December 28, 2005, Big Lots suspended LeClere's employment pending further investigation.

Big Lots's Loss Prevention Manager, Steve McClard, investigated the incident. McClard took written statements from LeClere and Meyer. In her statement, LeClere admitted that all three things she had done were "wrong and against company policy."

On December 29, 2005, Big Lots terminated LeClere's employment.

## VI. ANALYSIS: COMMON LAW WRONGFUL DISCHARGE

The court shall now analyze whether summary judgment is appropriate on Count I, LeClere's common law wrongful discharge claim.

### A. Arguments

In support of her wrongful discharge claim, LeClere contends that the Handbook created an implied contract of employment that forbade Big Lots from firing her unless it followed the progressive discipline set forth in Disciplinary Counseling. LeClere alleges that Big Lots breached this unilateral contract when it fired her immediately and without holding a Counseling Session. LeClere opines in her brief that she "decide[d] to work for [Big Lots] based on [the] employee-empowering language" in the Handbook and "[w]hen

8

a misunderstanding occurred between her and [Meyer], she expected to be able to work it out during counseling as stated in her handbook."

Big Lots argues that LeClere cannot prove the existence of a unilateral contract that required progressive discipline, because the Handbook was not sufficiently definite in its terms to create such an offer. Big Lots points out that (1) Disciplinary Counseling is expressed in permissive phrases, not mandatory terms; (2) Big Lots never stated that it would always impose the progressive discipline contemplated in Disciplinary Counseling and (3) in the Handbook, Big Lots expressly reserved the right to alter all of its procedures at any time without notice. In the alternative, Big Lots points out that the Handbook and the Form expressly disclaim the existence of a unilateral employment contract.

### *B. Law*

In Iowa, employment relationships are presumed to be at-will. *Bradshaw v. Brown Group, Inc.,* 258 F.3d 847, 849 (8th Cir. 2001) (citing *Fogel v. Trustees of Iowa Coll.*, 446 N.W.2d 451, 455 (Iowa 1989)); *see also Theisen v. Covenant Med. Ctr., Inc.*, 636 N.W.2d 74, 79 (Iowa 2001) (requiring plaintiff-employee "[t]o defeat the presumption of at-will employment"); *Jones v. Lake Park Care Ctr., Inc.*, 569 N.W.2d 369, 374 (Iowa 1997) ("In Iowa, employment relations are presumed to be at-will."); *Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 282 (Iowa 1995) (same). That is, an employer generally may discharge an employee who does not have a written employment contract "for any lawful reason or for no reason at all." *Lloyd v. Drake Univ.*, 686 N.W.2d 225, 228 (Iowa 2004) (citations omitted).

The Iowa Supreme Court has recognized two narrow exceptions to the employment at-will doctrine. *Jones*, 569 N.W.2d at 375; *see also Anderson*, 540 N.W.2d at 282 ("Iowa's strong support of the at-will presumption is demonstrated by our reluctance to undermine the rule with exemptions. We have carved out only two narrow deviations

9

. . . ."). The exceptions are (1) when the discharge violates a well-established and clearly-defined public policy, *see, e.g., Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 285-88 (Iowa 2000), and (2) when an employee handbook, which guarantees that discharge will occur only for cause or under certain circumstances, creates an implied contract of employment, *see, e.g.*, *French v. Foods, Inc.*, 495 N.W.2d 768, 770 (Iowa 1993).

Whether an employee handbook creates a unilateral contract is a question of law for the court to decide, unless the employee handbook is ambiguous. *Bradshaw*, 258 F.3d at 849 (citing *Thompson v. City of Des Moines*, 564 N.W.2d 839, 844 (Iowa 1997)). An employee handbook creates a unilateral contract only if three conditions are met: "'(1) the handbook is sufficiently definite in its terms to create an *offer*; (2) the handbook has been communicated to and accepted by the employee so as to create an *acceptance*; and (3) the employee has continued working, so as to provide *consideration*.'" *Id*. at 849 (quoting *Fogel*, 446 N.W.2d at 456) (emphasis in *Fogel*). To determine whether prong one of this three-part test is met, that is, whether a manual is sufficiently definite to constitute an offer, the court must consider three questions:

> "(1) Is the handbook in general and the progressive disciplinary procedures in particular mere guidelines or a statement of policy, or are they directives? (2) Is the language of the disciplinary procedures detailed and definite or general and vague? (3) Does the employer have the power to alter the procedures at will or are they invariable?"

*Id*. at 850 (quoting *Anderson*, 540 N.W.2d at 286).

Alternatively, disclaimers can be an effective means to defeat an employee's claim that a unilateral contract exists. *Bradshaw*, 258 F.3d at 849 n.1 (citing *Anderson*, 540 N.W.2d at 287-88). An effective disclaimer clarifies that it was not the intent of the employer to make an offer. *Anderson*, 540 N.W.2d at 287. "In the context of employee

10

handbooks, the essential purpose of a disclaimer is to claim at-will status for the employment relationship by repudiating or denying liability for statements expressed in the handbook." *Id.* (citation and internal quotation marks omitted).

Under Iowa law, the court must examine two factors to determine whether a disclaimer is effective. *Id.* at 288. First, the court must determine whether the disclaimer is "clear in its terms." *Id.* That is, "does the disclaimer state that the handbook does not create any rights, or does not alter the at-will employment status?" *Id.* Second, the court must determine whether the coverage of the disclaimer is "unambiguous." *Id.* That is, "what is the scope of its applicability?" *Id.*

There are no special requirements that the disclaimer be "conspicuous." *Id.* at 287-88 (stating that a conspicuous requirement would cause "unnecessary" uncertainty and explicitly "reject[ing] any special requirements for disclaimers"). The ultimate question is simply whether, in light of the language and context of the disclaimer, "a reasonable employee, reading the disclaimer, would understand it to mean that the employer has not assented to be bound by the handbook's provisions." *Id.* at 288.

### *C. Application*

The court finds that consideration of the three factors set forth in *Bradshaw* is not necessary, because the disclaimers are dispositive. In the case at bar, there are two disclaimers—one in the Handbook and one on the Form. Both disclaimers are clear in their terms and unambiguous in their scope. They explicitly provide that (1) the Handbook is not a unilateral contract; (2) the employment relationship was at-will; and (3) Big Lots could change the Handbook at any time without notice. *Cf. Bradshaw*, 258 F.3d at 851 (affirming dismissal of wrongful discharge claim, in part, because the employee handbook "provided that all policies were subject to change at any time"). Nothing in the location or language of the disclaimer suggests that it does not apply to the progressive discipline

policies, upon which LeClere relies for her wrongful discharge claim.  *Cf. Anderson*, 540 N.W.2d at 288 (finding that nothing in a disclaimer or its location showed any limitation on its scope).

The disclaimers in the case at bar are more comprehensive than others that the Iowa Supreme Court has held were sufficient to defeat a wrongful discharge claim.  For example, in *Anderson*, a single disclaimer simply stated:

> This Employee Handbook is not intended to create any contractual rights in favor of you or the Company.  The Company reserves the right to change the terms of this handbook at any time.

*Id.* at 288.  *Anderson* is one of many cases in which the courts have held that disclaimers, which are worded similarly to those in the case at bar, were effective against a wrongful discharge claim.  *See, e.g., Phipps v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 203-04 (Iowa 1997) (holding disclaimer was clear and unambiguous and affirming dismissal of breach of unilateral contract claim); *French*, 495 N.W.2d at 771 (same); *Olson v. Ballantine*, No. 03-1121, 2004 WL 2578958, at *2 (Iowa Ct. App. Nov. 15, 2004) (same); *Travillion v. Heartland Pork Enters., Inc.*, No. 02-1429, 2003 WL 21464807, *3-*4 (Iowa Ct. App. June 25, 2003) (same); *see also Landers v. Amtrak*, 345 F.3d 669, 673-74 (8th Cir. 2003) (applying Minnesota law and reaching same conclusion); *Berg v. Norand Corp.*, 169 F.3d 1140, 1146 (8th Cir. 1999) (applying Iowa law and reaching same conclusion); *Ewald v. Wal-Mart Stores, Inc.*, 139 F.3d 619, 622 (8th Cir. 1998) (applying Minnesota law and reaching same conclusion); *Morrow v. Air Methods*, No. 95-3851, 1996 WL 406136, at *2 (8th Cir. July 22, 1998) (same); *cf. Jones*, 569 N.W.2d at 376 (affirming factual finding of unilateral contract, in part, because handbook did not contain a disclaimer and commenting that, "[t]o ensure no implied contract is created by a

handbook the employer would be wise to include an appropriately drafted disclaimer").

In sum, the court holds that, in light of the disclaimers in the Handbook and the Form, no reasonable employee would understand the Handbook to create a unilateral contract. *Id*. The court shall grant the Motion and dismiss Count I with prejudice.

## *VII. CONCLUSION*

The Motion (docket no. 12) is **GRANTED**. Count I is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

**DATED** this 27th day of November, 2006.

_____
LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA